UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80126-RAR

**REGINALD ANDREW PAULK, SR.**,

    Plaintiff,

v.

**L. BENSON,** *et al.*,

    Defendants.
_____/

## ORDER DISMISSING PLAINTIFF'S AMENDED COMPLAINT

**THIS CAUSE** comes before the Court upon Plaintiff's Amended Complaint filed under 42 U.S.C. § 1983. *See* Amended Complaint [ECF No. 12] ("Am. Compl."). As required by 28 U.S.C. § 1915A, the Court has screened the Amended Complaint and, for the reasons stated herein, concludes that the Amended Complaint shall be **DISMISSED *with prejudice*** for failure to state a claim.

## LEGAL STANDARD

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, under § 1915(e)(2), "the court *shall*

dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## THE AMENDED COMPLAINT

The Court begins by recounting the basic factual allegations contained in Plaintiff's Amended Complaint. According to Plaintiff, two of the Defendants in this action, Daniel O'Hearon and Brian Leoffler, had previously stolen "personal property and boating equipment" from Plaintiff's sailboat. Am. Compl. at 5. On August 24, 2019, Plaintiff and his family went to Jim Barry Light Harbor Park in Riviera Beach, FL—where Plaintiff's sailboat is docked—and observed the purportedly stolen items on Brian Leoffler's boat "in plain view." *Id.* at 5, 7. Plaintiff confronted the two men, "a pushing and shoving insued [sic]," and Plaintiff was ultimately successful in retrieving his stolen property. *Id.* at 7. Plaintiff further alleged that Mr. O'Hearon and Mr. Leoffler confronted Plaintiff at least two more times that day "before I was able to remove myself, girlfriend, and grandson from the area to avoid any further harm or harassment." *Id.*

That same day, Mr. O'Hearon purportedly called 911 to report that Plaintiff had committed an armed assault. *Id.* A deputy sheriff with the Palm Beach County Sheriff's Office ("PBSO"), Defendant "L. Benson," responded to the call and spoke to Mr. O'Hearon and Mr. Leoffler. Mr.

O'Hearon falsely claimed that Plaintiff "threatened him with a handgun," whereas Mr. Leoffler claimed that Plaintiff threatened them "with a 6 foot long pitchfork." *Id.* at 7–8. Plaintiff alleges that Mr. O'Hearon and Mr. Leoffler "knowingly gave false information to law enforcement" to retaliate against Plaintiff. *Id.* at 7.

On August 25, 2019, Deputy Benson arrived with Mr. Leoffler to conduct a show-up while Plaintiff and his family were preparing to board Plaintiff's sailboat. *Id.* at 8. Plaintiff was identified and subsequently "handcuffed . . . in front of family, friends, beachgoers, and other boaters dispite [sic] their repeated pleas for the justification for [Plaintiff's] arrest." *Id.* at 9. Plaintiff contends that his arrest by Deputy Benson "was motivated by discriminatory intent in violation of my equal protection." *Id.*[1] Plaintiff also alleges that Deputy Benson failed to adequately investigate Mr. O'Hearon and Mr. Leoffler's statements before arresting him, and specifically avers that Deputy Benson never took a statement from Plaintiff. *Id.*

Plaintiff was charged with three counts of assault and one count of criminal mischief in Case No. 2019-MM-010792A in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida. *Id.* at 7, 9.[2] Plaintiff alleges that the two Assistant State Attorneys who prosecuted this misdemeanor case, Zachary O'Neil and Nicholas Kaleeo ("the ASA Defendants"), committed "prosecutorial misconduct" by "initiating and maintain a criminal action, charging a

---

[1] Plaintiff alleges that he is an African American male while both Mr. O'Hearon and Mr. Leoffler are White. Am. Compl. at 9. Plaintiff does not state what race Deputy Benson is.

[2] The Court takes judicial notice of the state court docket in Case No. 2019-MM-010792A to confirm the allegations contained within the Amended Complaint. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute.'") (quoting Fed. R. Evid. 201(b)).

Consistent with the Court's exercise of judicial notice, the Clerk is **INSTRUCTED** to include the Fifteenth Judicial Circuit's docket in Case No. 2019-MM-010792A, as of the date of this Order's rendition, as part of the record in this case, available at https://appsgp.mypalmbeachclerk.com/eCaseView/search.aspx (last accessed Apr. 27, 2022).

more serious crime(s) or seeking a more severe penalty that proper in retaliation of my lawful exercise of my constitutional right to trial." *Id.* at 9.

In addition, Plaintiff alleges that Mr. O'Neil and Mr. Kaleeo engaged in "conscience shocking" misconduct during Plaintiff's criminal trial on June 1, 2021. *Id.* at 9–10. During trial, Mr. O'Neil and Mr. Kaleeo "present[ed] false or backdated documents, sworn statements, altered or misleading crime scene photos, and coerced victim testimony." *Id.* at 10. Plaintiff also alleges that one of the State's witnesses, Wanda Hogancamp (Mr. Leoffler's girlfriend), knowingly committed perjury by claiming that Plaintiff "threatened to kill her," and that the Assistant State Attorneys "adopted" Ms. Hogancamp's false and perjurious testimony. *Id.* at 10–11. Despite all of this alleged malfeasance, a jury found Plaintiff not guilty on all counts. *Id.* at 10.

## **ANALYSIS**

The Amended Complaint asserts multiple causes of action against six different Defendants. Based on the allegations therein, the Court has been able to identify the following specific claims: (1) a claim of "slander" and knowingly "making false report/statement to law enforcement" against Defendants O'Hearon and Leoffler, *see* Am. Compl. at 3, 7–8; (2) a "failure to investigate/equal protection" claim against Deputy Benson in her individual and official capacities, *see id.* at 3, 8; (3) malicious prosecution claims against Defendants O'Neil and Kaleeo in their individual and official capacities, *see id.* at 9–11, and (4) a claim of perjury or "knowingly [making] false declarations" against Defendant Hogancamp, *see id.* at 10–11. Upon review of the Amended Complaint and the factual allegations made therein, the Court has concluded that the Amended Complaint must be dismissed since Plaintiff has failed to "state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b).

### A. Claims Against "Private Citizen" Defendants (O'Hearon, Leoffler, and Hogancamp)

The Court first turns to Plaintiff's various claims against Defendants O'Hearon, Leoffler, and Hogancamp (the "Private Defendants"). Plaintiff claims that the Private Defendants purposely made false statements—either to law enforcement or to a jury at Plaintiff's criminal trial—in an apparent attempt to retaliate against Plaintiff after Plaintiff confronted them over stealing his property. *See generally* Am. Compl. at 3–11. To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show "(1) that the [defendants] deprived her of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law." *Willis v. Univ. Health Servs., Inc.*, 993 F.3d 837, 840 (11th Cir. 1993) (emphasis added). Nowhere does Plaintiff allege that the Private Defendants violated a right that is protected by federal law or that they acted "under color of state law."

First, none of the claims against the Private Defendants implicate "any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. As to the slander claims against O'Hearon and Leoffler, slander and libel are exclusively state law claims and "do not state a violation of federal law and are not cognizable in a section 1983 civil rights action." *Charles v. Scarberry*, 340 F. App'x 597, 599–600 (11th Cir. 2009). The same goes for Plaintiff's claim against Hogancamp alleging perjury. *See Briscoe v. LaHue*, 460 U.S. 325, 329–30 (1983) ("§ 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding. . . . [W]hen a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'"). Although Plaintiff makes a perfunctory citation to the Fifth Amendment and contends that the Private Defendants' false statements amount to a violation of his right to due process, the law is clear that making a false statement does not intrude upon another person's constitutional rights—even if the false statements created collateral consequences. *See*

*Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005) (holding that an "injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest" protected by the Due Process Clause); *Charles v. Wade*, 665 F.2d 661, 666 (5th Cir. Unit B 1982) ("[A] witness [is] absolutely protected from any suit arising from his testimony in a judicial proceeding, even if his testimony was perjured and malicious.") (cleaned up); *accord Briscoe*, 460 U.S. at 328 n.4.

Even if the Court assumes that the Private Defendants infringed upon a right protected by § 1983, Plaintiff also fails to allege that any of this group of three acted "under color of state law." The Amended Complaint is unambiguous that none of the Private Defendants were employed by a state, local, or municipal government and that they are all merely private citizens. *See* Am. Compl. at 3 (failing to provide a job or title held by Defendants O'Hearon, Leoffler, and/or Hogancamp); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation omitted). Still, a private individual <u>can</u> be liable under § 1983 when his or her actions can "properly be attributed to the state." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003).

Three distinct tests have been used to determine whether a private person's conduct rises to the level of state action: "the public function test," "the state compulsion test," and "the nexus/joint action test." *Willis*, 993 F.2d at 840. The Private Defendants meet none of the requirements of any of the tests. First, the public function test only applies "to instances where private actors are performing functions 'traditionally the exclusive prerogative of the state,'" and Plaintiff does not allege that any of these private defendants were engaged in any activity that could remotely be considered a "traditional public function." *Id.* (quoting *Nat. Broad. Co., Inc. v. Commc'n Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988)).

Second, the state compulsion test cannot be met because Plaintiff does not claim that the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." *Nat. Broad. Co.*, 860 F.2d at 1026. On the contrary, the allegations in the Amended Complaint establish that the opposite is true: the private defendants <u>instigated</u> the State's involvement in this case, not *vice versa*. *See* Am. Compl. at 7 (alleging that the State's investigation of Plaintiff began after "Defendants [O'Hearon and Leoffler], both knowingly gave false information to law enforcement").

Finally, the nexus/joint action test does not apply since Plaintiff has not alleged that the Private Defendants' actions were part of a formal agreement between them and any other state actor. This test requires a plaintiff to show that "the State has so far insinuated itself into a position of interdependence with the [private individual] that it must be recognized as a joint participant in the challenged activity." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). Plaintiff implies, but does not explicitly state, that the other Defendants and the Private Defendants had to have jointly acted together since the Private Defendants' repeated lies were needed to sustain a prosecution against Plaintiff. *See, e.g.*, Am. Compl. at 11 (alleging that the prosecutors knowingly "adopted defendant Wanda Hogancamp['s] capacity to commit perjury while under oath"). Even so, Plaintiff fails to allege that the Private Defendants reached a formal agreement with any other person or entity to continue lying about Plaintiff's actions on August 24, 2019, in order to sustain Plaintiff's prosecution and ultimately secure a conviction. *See Horton v. Williams*, 572 F. Supp. 2d 1292, 1297–98 (M.D. Ala. 2008) (denying a § 1983 claim against a private person under the nexus/joint access test because "the evidence is not sufficient to show that there was an agreement between Shockley and Williams to arrest and prosecute [the plaintiff]"); *cf. Rowe v. City of Fort Lauderdale*, 8 F. Supp. 2d 1369, 1376–77 (S.D. Fla. 1998) ("The linchpin for a conspiracy [to wrongfully prosecute] is the agreement between the parties, and where the

complaint fails to allege this agreement, the complaint is deficient and should be dismissed."). Accordingly, Plaintiff has failed to state a claim upon which relief can be granted as to any of the Private Defendants.

### B. Official Capacity Claims

Next, Plaintiff raises "official capacity" claims against the ASA Defendants and Deputy Benson. An official capacity suit "is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (cleaned up). The benefit of an official capacity action is that a defendant cannot assert any immunity defense except "forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). However, unlike an individual capacity suit where "it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right," the plaintiff must specifically show that the entity's "policy or custom" played a part in the violation of federal law. *Id.* at 166. In other words, the plaintiff must show that the governmental entity employing the defendants has a policy or custom that "is the 'moving force' behind the constitutional deprivation." *Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990).

Plaintiff cannot bring an official capacity claim against the ASA Defendants or Deputy Benson because he does not allege that either of their employers—the State Attorney's Office for the Fifteenth Judicial Circuit and PBSO, respectively—instituted policies or otherwise directed the individuals named in the Amended Complaint to deprive Plaintiff of his constitutional rights.[3] *See*

---

[3] In addition, Plaintiff cannot bring any official capacity claims because he only seeks monetary damages. *See* Am. Compl. at 5 ("In this matter monetary compensation is sought."). It is well-established that the doctrine of sovereign immunity prevents a plaintiff from receiving monetary damages from the State; therefore, in an official capacity suit, the plaintiff can only receive injunctive relief and cannot collect money damages from a defendant sued in their official capacity. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1579 (11th Cir. 1994) ("Because the Eleventh Amendment bars from federal court an action

*Jones v. Cannon*, 174 F.3d 1271, 1292 (11th Cir. 1999) (dismissing an official capacity claim where the plaintiff "failed to produce evidence of any policy, custom, or practice of the [sheriff's office] that is the moving force behind his harassment"). Consequently, the Court dismisses any official capacity claims that may be contained within the Amended Complaint.

### C. Malicious Prosecution Claims against O'Neal and Kaleeo

Plaintiff also raises "prosecutorial misconduct" claims against the two ASA Defendants—Mr. O'Neal and Mr. Kaleeo. While the Amended Complaint uses the term "prosecutorial misconduct," Plaintiff's allegations that the ASA Defendants improperly "initiat[ed] and maintain[ed] a criminal action" against him are more properly categorized as malicious prosecution claims. Am. Compl. at 9; *see also Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) (defining a malicious prosecution claim as a tort where a prosecution is initiated "with malice and without probable cause."). To establish a claim for malicious prosecution under § 1983, a plaintiff must prove that all "the elements of the common-law tort of malicious prosecution,"[4] and that "a violation of his Fourth Amendment right to be free from unreasonable seizures" occurred. *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).

The Court starts and ends its analysis of these claims with a basic premise: prosecutors are "entitled to absolute immunity for certain functions intimately associated with the judicial process." *Hart v. Hodges*, 587 F.3d 1288, 1294 (11th Cir. 2009). This absolute immunity extends

---

seeking money damages from a state, a damages suit against state officials or employees in their official capacities, as that term is defined in the federal decisions, is also barred.").

[4] While the Eleventh Circuit previously "looked to modern tort law when adjudicating claims of malicious prosecution under section 1983," it has since held that the elements of malicious prosecution must be derived from common-law principles "that were well settled at the time of section 1983's enactment." *Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020) (cleaned up). The Supreme Court has (very) recently clarified that the common law elements of a malicious prosecution tort are: "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious' . . . ; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022) (quoting T. Cooley, *Law of Torts* 181 (1880)).

to any actions a prosecutor takes in his or her role as "an advocate for the state." *Id.* at 1295.  This includes actions related to "initiating a prosecution and in presenting the State's case[,] . . . conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing." *Rehberg v. Paulk*, 611 F.3d 828, 837–38 (11th Cir. 2010) (internal citations omitted); *see also Imbler v. Pachtman*, 424 U.S. 409, 437 (1976) ("The general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution.").  All the allegations against the ASA Defendants concern their conduct in "initiating and maintaining a criminal action," so these defendants are entitled to absolute immunity from suit.  Am. Compl. at 9.

True, Plaintiff alleges that the ASA Defendants engaged in scurrilous and unethical behavior—*to wit*, "presenting false or backdated documents, sworn statements, altered or misleading crime scene photos, and coerced victim testimony." *Id.* at 10.  Even accepting these allegations are true, prosecutorial immunity is so potent that "even if [the ASA Defendants] knowingly proffered perjured testimony and fabricated exhibits at trial, [they] are entitled to absolute immunity from liability for doing so." *Rowe v. City of Fort Lauderdale*, 278 F.3d 1271, 1279–80 (11th Cir. 2002).  Since the Amended Complaint only alleges that the ASA Defendants acted improperly in the context of prosecuting Plaintiff before the state court, Plaintiff is clearly barred from suing either of the ASA Defendants under the doctrine of absolute immunity.

### D. Wrongful Arrest/Equal Protection Claim Against Deputy Benson

The final claim the Court will address is also Plaintiff's most substantive.  Plaintiff alleges that he was arrested by Deputy Benson "without interview[ing] me and without an explanation." Am. Compl. at 9.  Although Plaintiff does not use this exact terminology, the substance of this claim is that he was wrongfully arrested by Deputy Benson.  *See Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (defining a wrongful arrest as "an arrest without probable cause").

Plaintiff does, however, lodge an explanation as to why he was arrested: "L. Benson was motivated by discriminatory intent in violation of my equal protection while investigating an altercation between me and Caucasian complainants." Am. Compl. at 9. To rephrase the claim as succinctly as possible, Plaintiff alleges that Deputy Benson lacked probable cause to arrest Plaintiff and that she only did so based on racial animus.

A wrongful arrest occurs when an arrest is made without probable cause—"probable cause for an arrest exists when, based upon the totality of the circumstances, the arrest is reasonable." *Sosa v. Hames*, 218 F. App'x 976, 977 (11th Cir. 2007). "This standard is met 'when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" *Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007)). However, while arresting an individual without probable cause is improper, the arresting officer is still entitled to qualified immunity if he or she had "arguable probable cause" to arrest the defendant. *Skop*, 485 F.3d at 1137. Law enforcement has "arguable probable cause" to effectuate an arrest if "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest the plaintiff." *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006) (internal quotation omitted). The existence of either probable cause or arguable probable cause "naturally depends on the elements of the alleged crime and the operative fact pattern." *Skop*, 485 F.3d at 1137–38 (internal citation omitted).

Once again, the Court cannot conclude that Plaintiff has alleged a cognizable claim in the Amended Complaint. Plaintiff avers that he was arrested for aggravated battery, Am. Compl. at 9, yet a review of the docket in Plaintiff's criminal state court case shows that he was initially arrested, and charged, with aggravated assault with a deadly weapon, *see* Probable Cause

Affidavit, *State v. Paulk*, No. 2019-MM-010792A (Fla. 15th Cir. Ct. Aug. 26, 2019), Docket No. 9.[5] Either way, Deputy Benson had "arguable probable cause" to arrest Plaintiff. Plaintiff admits in the Amended Complaint that he confronted the Private Defendants about allegedly stolen property and that "pushing and shoving insued [sic]." Am. Compl. at 7. In addition, Plaintiff also alleges that law enforcement was told prior to his arrest that he "threatened [O'Hearon] with a hand gun," and that Plaintiff also brandished "a 6 foot long pitchfork." *Id.* at 7–8.[6] Based on this information, it would be reasonable for Deputy Benson (or any other law enforcement officer) to infer that: (1) Plaintiff was involved in a confrontation with the Private Defendants, and (2) Plaintiff used some kind of deadly weapon—either a firearm or a pitchfork or both—during this confrontation. *Cf. Brown v. State*, 86 So. 3d 569, 571 (Fla. 5th DCA 2012) ("A deadly weapon is defined as an instrument that will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design."). This purported conduct would be sufficient to arrest any person for either aggravated battery or aggravated assault with a deadly weapon under Florida law.

The fact that the Private Defendants could have lied about Plaintiff's possession of a deadly weapon is irrelevant to a probable cause determination. Even falsified witness testimony can still

---

[5] In Florida, aggravated battery requires a showing that the defendant intentionally touched the victim and "either inflict[ed] great bodily harm or us[ed] a deadly weapon." *Webb v. State*, 997 So. 2d 469, 470 (Fla. 2d DCA 2008) (citing Fla. Stat. § 784.045). In contrast, an aggravated assault with a deadly weapon has four elements: "(1) the defendant intentionally and unlawfully threatened, either by word or act, to do violence to the victim, (2) at the time, the defendant appeared to have the ability to carry out the threat, (3) the act of the defendant created in the mind of the victim a well-founded fear that violence was about to take place, and (4) the assault was with a deadly weapon." *Howard v. State*, 245 So. 3d 962, 963 (Fla. 1st DCA 2018); *accord* Fla. Stat. § 784.021(1)(a). In any event, the charges against Plaintiff were reduced and he only faced trial for the misdemeanor offenses of simple assault and criminal mischief. *See* Amended Information, *State v. Paulk*, No. 2019-MM-010792A (Fla. 15th Cir. Ct. Aug. 26, 2019), Docket No. 246.

[6] While the probable cause affidavit filed in the state court criminal case mentions the pitchfork, it does not contain any allegation that Plaintiff used or threatened to use a firearm. Probable Cause Affidavit, *State v. Paulk*, No. 2019-MM-010792A (Fla. 15th Cir. Ct. Aug. 26, 2019), Docket No. 9 at 2.

give law enforcement probable cause for an arrest unless Deputy Benson <u>knew</u> that the Private Defendants were lying. *See Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (holding that an officer is entitled to qualified immunity unless "a reasonable police officer would have known that [the witness's] testimony was not just negligently false, but recklessly so"); *Hendricks v. Sheriff, Collier Cnty., Fla.*, 492 F. App'x 90, 93–94 (11th Cir. 2012) ("[T]he positive show-up identification and the victims' call to the Sheriff's Department would have still given the deputies actual or arguable probable cause to arrest."); *Byrd v. Jones*, No. 14-cv-01469, 2015 WL 2194697, at *13 (N.D. Ala. May 11, 2015) ("[T]he statements of the witnesses in the police report were sufficient to give Jones arguable probable cause that a crime had been committed . . . [t]he fact that the witnesses may have lied to Jones about their custodial claim does not mean that Jones lacked arguable probable cause unless he had some reason not to believe the truthfulness of what the witnesses told him."). Plaintiff does not allege that Deputy Benson knew that the Private Defendants had lied to her. Plaintiff only suggests that, had Deputy Benson heard his side of the story, she would have realized that the arrest was improper. *See* Am. Compl. at 9 ("Sheriff's deputies then, without interview[ing] me and without an explanation, handcuffed me."). This is irrelevant to determining a wrongful arrest since the allegations within the Amended Complaint show that Deputy Benson possessed information that would cause her to reasonably conclude that "[Plaintiff] had committed or was committing a crime." *Alston*, 954 F.3d at 1318.

Plaintiff's claim that his arrest violated the Equal Protection Clause of the Fourteenth Amendment also fails. To plead an equal protection claim against a state actor, "a plaintiff must proffer sufficient factual allegations to show that: (1) plaintiff was treated differently from other similarly situated individuals, and (2) such differential treatment was based upon impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of a constitutional right, or malicious bad faith intent to injure a person." *Lozman v. City of Riviera Beach*, 39 F.

Supp. 3d 1392, 1411 (S.D. Fla. 2014). Even assuming that Plaintiff is correct that Deputy Benson arrested Plaintiff solely because he is African American (while conversely assuming that the all-White Private Defendants were 100% truthful), Plaintiff fails to allege that he was treated differently from any other "similarly situated" person and instead improperly relies upon "conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent." *Giraldo v. City of Hollywood Fla.*, 142 F. Supp. 3d 1292, 1301 (S.D. Fla. 2015) (cleaned up).[7] Ultimately, Plaintiff fails to allege that his arrest by Deputy Benson was in violation of the Constitution or federal law; therefore, no claim can be brought against Deputy Benson since she is entitled to qualified immunity.

## CONCLUSION

The Court has conducted its screening process pursuant to 28 U.S.C. § 1915A and concludes that the entirety of the Amended Complaint must be dismissed <u>with prejudice</u> for failing to state any claim upon which relief may be granted. *Id.* § 1915A(b)(1); *see also White v. Lemma*, 947 F.3d 1373, 1376–77 (11th Cir. 2020) ("A dismissal for failure to state a claim under the early screening provision is not different from a dismissal under [Fed. R. Civ. P. 12(b)(6)]. It is on the merits and with prejudice.") (internal citations omitted). Accordingly, it is hereby

---

[7] It is also worth mentioning that the limited record before the Court suggests that Deputy Benson had a non-discriminatory reason to arrest Plaintiff since there was arguable probable cause to believe Plaintiff committed a crime. *See Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 338 (2d Cir. 2000) (rejecting an equal protection claim where law enforcement solely performed traffic stops of young Black men because "[the police] were searching for a particular perpetrator of a violent assault, relying in their search on the victim's description of the perpetrator as a young [B]lack man with a cut on his hand."); *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 391 (D. Mass. 2016) ("Martinez's only 'evidence' of intentional discrimination on the basis of race is the purported absence of reasonable suspicion to pull over the Acura . . . 'solely because the occupants were minority youths.' As noted above, it is undisputed that Hubbard had reasonable suspicion to pull over the Acura for stolen license plates.").

**ORDERED AND ADJUDGED** that the Amended Complaint [ECF No. 12] is **DISMISSED** *with prejudice*. All pending motions, if any, are **DENIED** as moot. All deadlines are **TERMINATED**. This case is **CLOSED**.[8]

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 27th day of April, 2022.

_____
RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

cc:   Reginald Andrew Paulk, Sr.
600419
South Florida Reception Center
Inmate Mail/Parcels
14000 NW 41st Street
Doral, FL 33178
PRO SE

600419
Martin Correctional Institution
Inmate Mail/Parcels
1150 SW Allapattah Road
Indiantown, FL 34956
PRO SE

---

[8] The Court has also taken judicial notice of the Florida Department of Corrections' "Inmate Population Information Search," available at http://www.dc.state.fl.us/OffenderSearch/Search.aspx?TypeSearch=AI (last accessed Apr. 27, 2022); *see also Barnette v. Tucker*, No. 19cv4743, 2021 WL 2667534, at *15 (N.D. Fla. May 20, 2021) (taking judicial notice of the Department of Corrections' records to determine where a prisoner was currently housed). It appears that Plaintiff has been moved from the South Florida Reception Center to Martin Correctional Institution. The Clerk is **INSTRUCTED** to mail a copy of this Order to Plaintiff at both locations.